IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERRANCE LOFTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 898 |
| | ) | |
| CHICAGO POLICE OFFICERS KEVIN | ) | Judge John Z. Lee |
| EBERLE and BRIAN FORBERG, CITY | ) | |
| OF CHICAGO, and RAMESH PATEL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Terrence Lofton has sued the City of Chicago, Chicago Police Officers Kevin Eberle and Brian Forberg, and Dunkin Donuts store manager Ramesh Patel for violating his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983 and has asserted various state law claims. Defendants City of Chicago and Chicago Police Officers Kevin Eberle and Brian Forberg move to dismiss Plaintiff's First Amended Complaint. For the reasons provided herein, the Court grants the motion to dismiss the federal claims asserted in Counts I through III and declines to exercise supplemental jurisdiction over the state law claims asserted in Counts IV through VIII.

## Factual Background

The following facts are taken from the First Amended Complaint[1] and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald,* 664 F.3d

---

[1] Defendants included a deposition of Defendant Patel as well as the court transcript of the disposition of the underlying criminal matter as attachments to their motion to dismiss. According to Defendants, both documents can be considered by the Court because they are referred to in the First Amended Complaint and are central to the case. *Geinosky v. City of Chi.,* 675 F.3d 743, 745 n.1 (7th Cir. 2012). The Court need not reach the issue, however, because neither is necessary to decide the instant motion.

206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL–CIO v. Exelon Corp.,* 495 F.3d 779, 782 (7th Cir. 2007).

In October and November 2005, three reported robberies occurred at the Dunkin Donuts store located at 10401 South Western Avenue, Chicago, Illinois. 1st Am. Compl. ¶ 11. Defendant Ramesh Patel, the store manager, witnessed all of the robberies. *Id.* ¶ 12. Patel described the man who robbed the store the first time as a six-foot-tall black male with brown eyes between the ages of 22 and 25, weighing between 150 to 175 pounds, and having a dark complexion. *Id.* ¶ 14. Patel described the man who robbed the store on the second occasion the same way, except he described him as having a medium complexion. *Id.* ¶ 20. Patel's description of the man who robbed the store on the third occasion differed from the first two occasions only to the extent that he described the offender as having a light complexion. *Id.* ¶ 27. On November 12, 2005, the day of the third robbery, Chicago police arrested a man in the vicinity of the Dunkin Donuts matching the description of the offender in the three robberies. *Id.* ¶ 28. The suspect was placed in a line up; however, Patel was unable to identify the suspect, and the suspect was released. *Id.* ¶ 29.

At around 11:30 p.m. on November 13, 2005, Plaintiff Terrence Lofton had just finished playing basketball with three of his friends when they decided to drive to the Dunkin Donuts store to get beverages. *Id.* ¶¶ 31–33. Plaintiff, who was driving, remained in the car with one of his friends, while his other two friends approached the Dunkin Donuts store. *Id.* ¶¶ 34–35. However, the door was locked, and the men returned to Plaintiff's car. *Id.* ¶ 36. Shortly after they left Dunkin Donuts, the Defendant Officers pulled over Plaintiff's vehicle and arrested him. *Id.* ¶ 37. At the time of his arrest, Plaintiff was six feet, two inches tall, weighed 155 pounds, with brown eyes, a medium complexion, a mustache, and a full goatee beard. *Id.* ¶ 39.

At approximately 6:00 a.m. the following day, Plaintiff was included in a line up conducted by Officers Forberg and Eberle. *Id.* ¶ 40. Patel did not identify anyone as a suspect. *Id.* ¶ 41. Officer Forberg pointed Plaintiff out to Patel and told him that Plaintiff was the offender and had an extensive criminal history. *Id.* ¶ 42. Despite Patel's refusal to identify Plaintiff, the officers fabricated their report to indicate that Patel had positively identified Plaintiff as the offender. *Id.* ¶ 49. The officers also induced Patel to sign a complaint falsely naming Plaintiff as the offender. *Id.* ¶ 50.[2]

About one month later, on December 18, 2005, police were called to an armed robbery in progress at a different Dunkin Donuts located at 14631 S. Pulaski Road in Midlothian, Illinois. *Id.* ¶ 56. The offender, Bobby Pounds, was fatally shot at the scene by Midlothian police. *Id.* ¶ 57. Pounds was a twenty-year-old black male, who was six feet, one inch tall and weighed 158 pounds. *Id.* ¶¶ 57–58. Information about the Pounds' robbery and shooting was disseminated throughout the Chicago Police Department and was specifically provided to the Defendant Officers. *Id.* ¶ 61. The Defendant Officers, however, failed to investigate any potential connection between the Midlothian Dunkin Donuts robbery and the three robberies in Chicago with which Plaintiff had been charged. *Id.* ¶ 62. They did not compare surveillance footage or speak to Pounds' family members. *Id.* ¶¶ 65–66.

Two-and-a-half years later, on June 16, 2008, Plaintiff's defense attorneys and an investigator met with Patel at the Dunkin Donuts regarding his identification of Plaintiff. *Id.* ¶ 68. Patel stated that he did not get a good look at the person who had robbed him and that he told the officers he could not identify anyone at either line up. *Id.* ¶ 70. Patel also told the attorneys and the investigator that the officers had told him that Plaintiff was the offender and

---

[2] Another witness to the first robbery was also brought in to view a line up, but she was unable to identify Plaintiff as the offender. *Id.* ¶ 47.

showed him a gun that they claimed came from Plaintiff's car and was used in the robberies. *Id.* ¶ 71. Patel told the officers that he was unsure whether Plaintiff was the offender but that he believed if the officers said Plaintiff was the guy, the officers should know. *Id.* ¶ 72.

Plaintiff's defense attorney showed Patel four photos, one of whom was Plaintiff, but Patel could not identify the robber, stating that all four photos looked the same to him. *Id.* ¶ 74. The investigator asked Patel to sign a statement reflecting his comments, but Patel refused to do so. *Id.* ¶¶ 76–77. Patel told them that he had already provided the other attorney and the police with the same information. *Id.* ¶ 78.

Plaintiff's defense attorneys then went to the assistant state's attorney with this information. *Id.* ¶ 79. The assistant state's attorney met with Patel on August 4, 2008, and Patel stated that he had talked to two lawyers and an investigator and did not read the statement the investigator prepared. *Id.* ¶ 80. Patel then told the assistant state's attorney that he could not identify the man who had committed the robberies and that he only identified Plaintiff because the officers had told him that Plaintiff was the offender. *Id.* ¶ 81. On August 28, 2008, the Cook County State's Attorney's Office dismissed the charges against Plaintiff by way of a *nolle prosequi* motion.[3] *Id.* ¶ 81. He was immediately released from custody after spending 1021 days in jail. *Id.* ¶¶ 82–83.

## **Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990).

---

[3] "The Latin term *nolle prosequi* means 'not to wish to prosecute.'" *People v. Hughes*, 983 N.E.2d 439, 448 (Ill. 2012) (quoting Black's Law Dictionary 1147 (9th ed. 2009)). "In a criminal context, a *nolle prosequi* is not a final disposition of a case but . . . is a procedure which reverts the matter to the same condition which existed before the commencement of the prosecution." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) (quotation omitted).

4

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

## Analysis

### I. Fourteenth Amendment Substantive Due Process Claims

Plaintiff advances three theories to support his due process claim. First, he asserts that Defendant Officers fabricated evidence against him, including fabricating their report of the lineup and the positive identification of Plaintiff by Patel. 1st Am. Compl. ¶ 103. Second, he argues that Defendant Officers committed *Brady* violations by failing to disclose the exculpatory evidence that Patel could not initially identify Plaintiff and that Defendants had induced Patel to identify Plaintiff by telling Patel that Plaintiff was the perpetrator and had an extensive criminal history. *Id.* ¶ 109. Third, Plaintiff claims that Defendant Officers' failure to investigate the connection between the Chicago robberies and the Midlothian robbery caused him to be wrongfully charged. *Id.* ¶ 116. The Court addresses each of these theories in turn.

#### A. Fabrication of Evidence (Count I)

"There is no question that a due process violation takes place when fabricated evidence is used at trial . . . ." *Padilla v. City of Chi.*, 932 F. Supp. 2d 907, 926 (N.D. Ill. 2013) (citing

*Buckley v. Fitzsimmons,* 20 F.3d 789, 796 (7th Cir. 1994)). However, "without a trial no such due process claim exists." *Id.* (citing *Brooks v. City of Chi.,* 564 F.3d 830, 833 (7th Cir. 2009)).

In *Brooks v. City of Chicago*, the plaintiff claimed he had been arrested based on fabricated evidence, jailed for five months, and then released when the state dropped the charges against him. 564 F.3d at 831. He sued the police officers for violating his due process rights under section 1983 by, among other things, creating and submitting false police reports. *Id.* The Seventh Circuit affirmed the district court's granting of defendants' motion to dismiss, holding that, at most, plaintiff's due process claim was, in essence, a state law malicious prosecution claim. *Id.* at 833.

In *Alexander v. McKinney,* 692 F.3d 553, 555 (7th Cir. 2012), the plaintiff alleged that police officers conspired to violate his due process rights by manufacturing false evidence, resulting in his arrest and a criminal trial at which he was acquitted. The Seventh Circuit affirmed the district court's dismissal of the plaintiff's due process claim because his acquittal foreclosed any due process claim. *Id.* at 557–58; *see also id.* at 557 n.2 ("It would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of the trial is to *effectuate* due process.").

Thus, together, *Brooks* and *Alexander* hold that a section 1983 plaintiff may state a due process claim based on the fabrication of evidence only when the fabricated evidence is used at trial and he or she is subsequently convicted. *See Bianchi v. McQueen,* No. 12 C 0364, 2014 WL 700628, at **11-12 (N.D. Ill. Feb. 24, 2014) (dismissing a fabrication-of-evidence due process claim where the plaintiff was acquitted). As stated succinctly in *Saunders-El v. Rohde*, "[n]ot every act of evidence fabrication offends one's due process rights . . . ." ___ F.3d ____, No. 14-1570, 2015 WL 400599, at *3 (7th Cir. Jan. 30, 2015).

Here, the state dropped the charges against Lofton via a *nolle prosequi* motion prior to trial. Because the purportedly fabricated evidence was never used against Lofton at trial and he was never convicted of the charges, Lofton fails to state a due process claim based on the alleged fabrication of evidence, and the Court grants Defendants' motion to dismiss Count I.

      **B.**      **Failure To Disclose Exculpatory Evidence (Count II)**

Plaintiff also claims that Defendant Officers violated his due process rights by failing to meet their *Brady* obligations. In *Brady v. Maryland*, the Supreme Court held that the right to due process requires a prosecutor to disclose to the defense all exculpatory evidence. 373 U.S. 83, 87 (1963). "That obligation extends to police officers, insofar as they must turn over potentially exculpatory evidence when they turn over investigative files to the prosecution." *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007).

To state a *Brady* violation, Lofton must allege that: "(1) the evidence at issue is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence has been suppressed by the government, either willfully or inadvertently; and (3) the suppressed evidence resulted in prejudice." *See United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) (citation omitted). Prejudice exists if there is "a reasonable probability that the suppressed evidence would have produced a different verdict," *id.* (citation and internal quotation omitted), or "if the decision to go to trial would have been altered by the suppressed evidence," *see Parish v. City of Chicago*, 594 F.3d 551, 553 (7th Cir. 2009).

In *Garcia v. City of Chicago* and *Ray v. City of Chicago*, the Seventh Circuit held that there was no basis for a *Brady* claim where the charges had been dropped prior to trial. *Garcia*, 24 F.3d 966, 971–72 (7th Cir. 1994) (holding that because the charges were dropped prior to trial, plaintiff's "right to due process of law was satisfied."); *Ray*, 629 F.3d 660, 664 (7th Cir.

7

2011) ("Ray has failed to identify a single instance, however, where we have allowed [a *Brady* claim] when the individual is merely charged with a crime, but never fully prosecuted."); *see also Cairel v. Alderden,* 09 C 1878, 2014 WL 916364, at *7 (N.D. Ill. Mar. 6, 2014); *Jones v. City of Chi.,* No. 08 C 3591, 2011 WL 1898243, at *3 (N.D. Ill. May 18, 2011). Because Lofton alleges that the charges against him were dismissed via a *nolle prosequi* motion prior to trial, see 1st Am. Compl. ¶ 82, the Court, adhering to *Garcia* and *Ray*, holds that he fails to state a *Brady* claim.[4] The Court thus grants Defendants' motion to dismiss Count II.

### C. Failure To Investigate (Count III)

Plaintiff makes the additional claim that the Defendant Officers deliberately failed to investigate the other robberies and that this failure caused him to be criminally charged and deprived him of substantive due process. 1st Am. Compl. ¶¶ 114–16. Specifically, Plaintiff contends that the Defendant Officers should have "compar[ed] the surveillance footage of the robberies, and ask[ed] family members and friends of Pounds whether Pounds [was] the individual depicted in the surveillance footage of the Chicago robberies." *Id.* ¶ 116.

Defendants argue that this claim improperly recasts an untimely Fourth Amendment false arrest claim and a state law malicious prosecution claim as a due process claim. *See Newsome v. McCabe,* 256 F.3d 747, 750–51 (7th Cir. 2001) (holding that a plaintiff may not bring a section 1983 claim for malicious prosecution because Illinois tort law provides an adequate remedy).

In *County of Sacramento v. Lewis*, the Supreme Court stated that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive

---

[4] Because a *nolle prosequi* is not the same as an acquittal, see *People v. Hughes*, 983 N.E.2d 439, 448 (Ill. 2012), the Court finds Plaintiff's reliance on cases, in which the criminal defendant was acquitted, inapposite. *See Mosley v. City of Chi.,* 614 F.3d 391, 397 (7th Cir. 2010); *Bielanski v. Cnty. of Kane,* 550 F.3d 632, 644–45 (7th Cir. 2008).

8

due process, must be the guide for analyzing these claims." 523 U.S. 833, 842 (1998) (internal quotation marks omitted). Because the Fourth Amendment prohibits arrests without probable cause, see *Jones by Jones v. Webb*, 45 F.3d 178, 181 (7th Cir. 1995), an allegation that an official failed to investigate, which, in turn, resulted in an improper arrest, is considered a claim of false arrest in violation of the Fourth Amendment, rather than a violation of the substantive due process clause of the Fourteenth Amendment. *See, e.g., Alexander,* 692 F.3d at 558 ("The Fourth Amendment, not the due process clause, is the proper basis for challenging the lawfulness of an arrest."); *Walker v. Considine*, No. 13 C 4216, 2014 WL 6820131, at * 3 (N.D. Ill. Dec. 3, 2014) (stating that the "failure to investigate is not a separate constitutional tort").

For his part, Plaintiff cites *Wilson v. Lawrence County*, 260 F.3d 946, 957 (8th Cir. 2001), for the proposition that a due process claim may be based on an officer's failure to investigate. In that case, a mentally disabled person was convicted after police officers failed to investigate other leads, later coercing him to confess and using his confession to force him to plead guilty to avoid the death penalty. *Id.* at 949–50. The *Wilson* court held that, under the circumstances in that case, failure to investigate can state a due process claim. *Id.* at 956.

The Court finds *Wilson* unpersuasive, however, because the Seventh Circuit has flatly rejected a due process claim based on the failure to investigate. In *Whitlock v. Brueggemann*, 682 F.3d 567, 585–86 (7th Cir. 2012), the defendants asserted that the plaintiff could not bring a due process claim based on the failure to investigate. *Id.* Although the *Whitlock* court ultimately addressed the plaintiff's allegations as an evidence-fabrication claim rather than a failure-to-investigate claim, the court agreed with defendants stating that "[t]here is no affirmative duty on police to investigate" and thus, a "failure to reinvestigate . . . is not a due process violation." *Id.* at 588.

9

Accordingly, the Court grants Defendants' motion to dismiss Count III. This cause of action is, in essence, a state law malicious prosecution claim, which he may pursue in state court.

## II.    State Law Malicious Prosecution

Because the Court grants Defendants' motion to dismiss Plaintiff's section 1983 due process claims, the Court is left only with Plaintiff's state law malicious prosecution claim against the Defendant Officers (Count IV), respondeat superior and indemnification claims against the City of Chicago (Counts V and VI), and tortious interference with prospective economic advantage and conspiracy claims against Defendant Patel (Counts VII and VIII). Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a supplemental state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999); *see Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors,* 273 F.3d 722, 732 (7th Cir. 2001).   Because the Court has dismissed all of the federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses them without prejudice.

## Conclusion

For the reasons stated herein, the Court grants Defendants' motion to dismiss Plaintiff's federal claims [21]. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses them without prejudice. This case is hereby terminated.

SO ORDERED	ENTER:  2/5/15

_____
**JOHN Z. LEE**
**United States District Judge**